```
         IN THE UNITED STATES DISTRICT COURT
      FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
                    AT CHARLESTON
```

**TERRI HARRISON and**
**ALEXIS COX,**

    **Plaintiffs,**

**v.**                                     **CIVIL ACTION NO. 2:08-cv-00078**

**BOARD OF GOVERNORS OF WEST**
**VIRGINIA UNIVERSITY, and**
**WEST VIRGINIA UNIVERSITY**
**INSTITUTE OF TECHNOLOGY,**

    **Defendants.**

## MEMORANDUM OPINION & ORDER

Before the court is the parties' proposed consent decree, submitted on May 11, 2011 (Doc. # 61). For reasons more fully expressed herein, the court **ADOPTS** and **ENTERS** the parties' proposed consent decree.

### I. Factual and Procedural History

This case involves a Title IX claim based on alleged sex discrimination in sports facilities. Plaintiffs, female softball players at West Virginia University Institute of Technology ("WVU Tech"), filed the instant action against the Board of Governors of West Virginia University in February 2008. Plaintiffs assert that WVU Tech did not provide the women's softball team with equipment and facilities equal to those of the men's baseball team.

Plaintiffs initially filed a complaint against WVU's Board of Governors with the Department of Education's Office of Civil

1

Rights.  The Office provided the parties with dispute resolution services, and the parties entered into an Early Complaint Resolution Agreement in August 2007.  Plaintiffs contend, however, that defendants breached the ECR Agreement by failing to implement the changes that defendants had promised.

   Subsequently, plaintiffs filed the instant action with this court, seeking resolution of their on-going dispute.  In June 2008, the parties mediated the case and produced a Memorandum of Understanding.  This Memorandum, however, failed to contain a provision requiring WVU Tech to construct a new softball field.  Since the plaintiffs wanted a new softball field to be constructed, they refused to sign the Memorandum, and as a result settlement of the dispute failed.

   In the subsequent months, the parties informed this court that they were exploring further settlement options and essentially asked that activity in the case be suspended until the parties had sufficient time to develop their discussions.  On July 1, 2010, the parties submitted a Joint Status Report (Doc. No. 51) in which they laid out a number of short and long-term solutions that both parties would be amenable to.  At the conclusion of their report, the parties indicate that they would be amenable to a consent decree consistent with the solutions the parties offer in their joint status report.

   On February 15, 2011, the court held a hearing in Bluefield,

West Virginia, at which counsel represented to the court that they had found a mutually-acceptable settlement. It was also further determined that plaintiffs' former counsel, Mr. Ranson, would pursue any claims for unpaid fees that he might have against the plaintiffs outside the confines of this case, thereby allowing a resolution of this instant dispute to go forward.

In accordance with counsels' representations at the February 15 hearing, the parties later filed with this court a Mutual Settlement and Agreement (Doc. # 60) as well as the instant Proposed Consent Decree.

## II. Consent Decree Standard

"A consent decree is a negotiated agreement that is entered as a judgment of the court, see Local 93, Int'l Ass'n of Firefighters v. City of Cleveland, 478 U.S. 501, 519, 92 L. Ed. 2d 405, 106 S. Ct. 3063 (1986), and thus has attributes of both contracts and judicial decrees, see United States v. ITT Continental Baking Co., 420 U.S. 223, 43 L. Ed. 2d 148, 95 S. Ct. 926 (1975)." Bragg v. Robertson, 83 F. Supp. 2d 713, 717 (S.D.W. Va. 2000). Additionally, "[a] consent decree is also a continuing order, one having prospective effect. Where, as here, the parties agree to the Court's continuing jurisdiction to enforce the decree, see Kokkonen v. Guardian Life Ins. Co. of America, 511 U.S. 375, 381-82, 128 L. Ed. 2d 391, 114 S. Ct. 1673 (1994), a party aggrieved by the other's noncompliance may apply

for an order to show cause why the noncompliant party should not be held in contempt." Id.

The United States Court of Appeals for the Fourth Circuit has explained that

> In considering whether to enter a proposed consent decree, a district court should be guided by the general principle that settlements are encouraged. See Durrett v. Housing Auth., 896 F.2d 600, 604 (1st Cir. 1990). Nevertheless, a district court should not blindly accept the terms of a proposed settlement. See Flinn v. FMC Corp., 528 F.2d 1169, 1173 (4th Cir. 1975). Rather, before entering a consent decree the court must satisfy itself that the agreement "is fair, adequate, and reasonable" and "is not illegal, a product of collusion, or against the public interest." United States v. Colorado, 937 F.2d 505, 509 (10th Cir. 1991). In considering the fairness and adequacy of a proposed settlement, the court must assess the strength of the plaintiff's case. See Flinn, 528 F.2d at 1172-73. While this assessment does not require the court to conduct "a trial or a rehearsal of the trial," the court must take the necessary steps to ensure that it is able to reach "an informed, just and reasoned decision." Id. (internal quotation marks omitted). In particular, the "court should consider the extent of discovery that has taken place, the stage of the proceedings, the want of collusion in the settlement and the experience of plaintiffs' counsel who negotiated the settlement." Carson v. American Brands, Inc., 606 F.2d 420, 430 (4th Cir. 1979) (en banc) (Winter, Circuit Judge, dissenting), adopted by Carson v. American Brands, Inc., 654 F.2d 300, 301 (4th Cir. 1981) (en banc) (per curiam). We review the decision of the district court to accept or reject a proposed settlement for abuse of discretion. See Flinn, 528 F.2d at 1172.

<u>United States v. North Carolina</u>, 180 F.3d 574, 581 (4th Cir. 1999).[1]

### III. Analysis

The court begins by noting that this dispute has been ongoing for almost four years, and has been vigorously litigated by both sides. As a consequence, the court finds that the proposed consent decree submitted by the parties is a result of lengthy, arms-length deliberation and careful consideration by both parties.

By way of summary, the proposed consent decree provides for both a short- and long-term solution to the disparity between the men's and women's athletic facilities.

With respect to the short term solution, the Defendants have reached an agreement with the Kanawha County Board of Education to allow the women's softball team to use the Riverside High School Softball Facilities. The parties are working to enter into a "Property Use Agreement" which outlines the specific uses of the athletic fields and related properties. The "Property Use Agreement" will provide that all games and practices will

---

[1] "Irrespective of the parties' proposed amicable resolution of this action, it is incumbent upon the court to assure itself of subject matter jurisdiction." <u>United States v. Patriot Coal Corp</u>, No. 2:09-0099, 2009 U.S. Dist. LEXIS 37304 (S.D. W. Va. Apr. 30, 2009). As this case was brought under Title IX of the Educational Amendments of 1972, 20 U.S.C. § 1681, the lawsuit comes within the court's federal question jurisdiction. Accordingly, the court is satisfied that it has subject matter jurisdiction over the action.

occur at the Riverside High School Facility. These facilities are located twelve miles from the West Virginia campus. Furthermore, the Defendants have hired a full-time head softball coach, Karen Gadberry, for their women's softball program.

The parties' proposed long-term solution provides for the renovation of Martin Field, which is the current, on-campus sports facility, to accommodate football, soccer and softball. Once implemented, this plan would establish a permanent home for the women's softball team, with appropriate facilities. The Defendants have already commissioned a feasibility study for the renovations, and have submitted the study's findings to the court. Having reviewed the study's findings, the court finds that the proposed renovations would afford the women's softball team suitable facilities.

In view of the foregoing, the court finds the proposed consent decree to be fair, adequate and reasonable. Further, the court is persuaded that it is not "illegal, a product of collusion, or against the public interest." Instead, the court is satisfied that the proposed consent decree sets forth a framework that will help to resolve the parties' dispute, and also contribute to the public interest.

### IV. Conclusion

Given the number of years this case has been before the court, the substantial time and resources expended by the parties

to reach a resolution, the desirability of the proposed long-term solution, and as no person has opposed entry of the consent decree, the court **ORDERS** as follows:

1. That the proposed consent be entered with the court's approval on this same date; and
2. That the court retain jurisdiction pursuant to paragraph 8 of the proposed consent decree and any other provision contemplating the potential for future action by the court.

Further, the court **DENIES** the Defendant's motion to reinstate this civil action (Doc. # 55) and the Ranson Law Offices' motion to intervene (Doc. # 57) as moot.

The Clerk is directed to forward a copy of this Memorandum Opinion and Order to all counsel of record.

It is **SO ORDERED** this 29th day of July, 2011.

                                   **ENTER:**

                                   David A. Faber
                                   Senior United States District Judge